### J. H. LOHNER v. N. J. COLDWELL.

Delivered February 17, 1897.

**1. Breach of Promise of Marriage—Damages.**

A man who promises to marry a woman and then, without just excuse, wholly makes default of appearance at the time appointed for the nuptial ceremony, is not entitled to relief against a verdict in her favor for $1000, as being excessive.

**2. Same—Evidence—Admissions.**

Defendant's admissions of an intention to marry the plaintiff, made at any time, whether before the promise, or after its breach and suit filed, are admissible in evidence as tending to prove the contract.

**3. Same—Same—Lameness.**

Evidence that defendant was lame was not admissible either to excuse his breach of the promise of marriage, or to show improbability of his having made such promise.

**4. Same—Insanity in Her Family.**

Nor can defendant excuse his breach of promise by alleging a taint of insanity in the family of his fiancee, where, if such was the case, he knew of it before making the promise, and it does not appear that the contract was broken on that account.

**5. Same—Justification—Conduct After Breach.**

It is no justification that, when defendant met plaintiff after his failure to duly appear at the appointed date (he not offering at such meeting to carry out the contract) she reproached him, and forbade his further calls.

**6. Same—Age of Plaintiff as Affecting Damages.**

There is fully as much culpability in breaking a promise of marriage made to an elderly woman as to a young woman.

APPEAL from El Paso. Tried below before Hon. C. N. BUCKLER.

*J. M. Dean* and *A. G. Wilcox*, for appellant.—1. Plaintiff's petition alleging that said contracts of marriage so made by defendant with

her prior to March, 1895, were broken by her, and that she dismissed him, the demurrer thereto should have been sustained, and the petition stricken out. Plaintiff's petition alleges she intimated to defendant that he should quit calling upon her; that defendant then quit. George v. Vaughan, 55 Texas, 130; Williams v. Warner, 28 Texas, 612; Railway v. Preston, 74 Texas, 181, 183.

2. The court erred in permitting H. Draper to testify, over objection, that "Mr. Lohner asked me what made Annie (meaning plaintiff) bring suit against him; that she had no grounds for it." "I told him Miss Annie (meaning plaintiff) thought a great deal of him. Mr. Lohner said that according to her actions towards him, and what other people told him of her intentions, he did not think she intended to marry; that he had always intended to marry her, and would now, if she would set him right before the public." For these reasons:

Because said testimony would induce the jury to believe the contract of marriage existed through defendant's intentions so expressed by him; and because, from said conversation, the jury could and did infer by reason of defendant's expression of good will toward plaintiff, and what his intention would be if she withdrew her suit, that he had made and entered into a contract of marriage with her prior to the filing of this action. Mitchel v. Zimmerman, 4 Texas, 75; Greenleaf's Ev., sec. 192; Roper v. Clay, 18 Mo., 383; Bennett v. Beam, 42 Mich., 346; Greenup v. Stoker, 7 Ill., 688; Greenleaf v. McNally, 14 N. H., 304.

3. Defendant's physical condition was admissible in evidence in mitigation of damages, and competent to establish the improbability of his entering into said contract. Sprague v. Craig, 51 Ill., 288; Allen v. Baker, 86 N. C., 91.

4. Evidence of hereditary insanity was admissible as tending to affect plaintiff's credibility and in mitigation of damages, and to show the improbability of defendant having made the contract to marry her. Walker v. Johnson, 33 N. E. Rep., 267, and 34 N. E. Rep., 100; Greng v. Lerch, 112 Pa. St., 244; Forte v. Hayne, 1 Car. & P., 546; 2 Parsons, Contracts (5 ed.), 65, and notes.

5. The court erred in permitting plaintiff's mother to testify "that after this suit was brought defendant told me that he always intended to marry the plaintiff; because it was not competent to establish by defendant's declaration as to his intentions that he had contracted to marry plaintiff, and said testimony was irrelevant; and because said conversation was brought about by said witness and was of the nature of a compromise, and would improperly influence the jury, and lead them to believe a contract or promise had been made by defendant to plaintiff to marry her. Hongman v. Campbell, 2 Don. & C., 282; Weaver v. Bachert, 2 Pa. St., 80; 2 Parsons, Contracts (5 ed.), 62, 63.

6. The court erred in refusing to permit defendant to prove by Mrs. Coldwell, the mother of plaintiff, the age of her son, Wilson; for the reason that he being her youngest living child, said testimony would have tested her memory, and have gone to plaintiffs' as well as her own

credibility, and have materially affected the measure of damages. The plaintiff testified she was born in 1861; that she was 37 years old. The date of the trial was May 2, 1896. Her mother said she and her husband lived together thirty-six years; that he had been dead fifteen years; that plaintiff was born sixteen months after their marriage. Plaintiff was according to her mother's testimony, born in 1846 or 1847; both said the first year of the war; the first year of the Mexican war was 1846. Had her brother's age have been shown, this would have fixed her age beyond question and contradicted her statements. Railway v. Dyer, 76 Texas, 156; Greenl. on Ev., sec. 446.

*Millard Patterson*, for appellee.—1. The trial court did not err in excluding from the jury the testimony offered that defendant was a lame man, physically injured, and had quit the service of the railroad company, as such testimony was not admissible in this case for any purpose. 3 Am. & Eng. Ency., Law, 526; 3 Suth. on Damages, 326; 2 Sedg. on Damages, sec. 637, et seq.

2. The trial court did not err in permitting plaintiff's mother to testify respecting the statement made by defendant after the suit was brought to the effect that he always intended to marry the plaintiff. Said testimony was relevant and material for the reason suggested in appellant's tenth assignment of error, that is, it had a tendency to establish the fact that there had been, prior to that time, an agreement between plaintiff and defendant to marry. 2 Sedg. on Damages (8 ed.), sec. 641; Bennett v. Beam, 42 Mich., 346, 32 Iowa, 409; 6 Cowan (N. Y.), 284.

FLY, ASSOCIATE JUSTICE.—Appellee sued appellant to recover damages arising from a breach of promise of marriage. The damages were laid at $15,000, and upon the trial, before a jury, a verdict and judgment for $1,000 were obtained by appellee.

We conclude that the testimony shows that appellant promised to marry appellee, and that he breached that promise, and that she sustained thereby the amount of damages found by the jury.

The first and second assignments present error in the action of the court in overruling exceptions to the petition. The petition presents a cause of action in a clear and concise manner, and was not open to the objections to it. It was alleged that appellant and appellee had agreed to marry, and that she incurred expense in preparing for the marriage which was set for a certain time. It was also alleged that, "through the promise of defendant, plaintiff was induced to give him the devotion of her heart, and was induced to entertain that affection toward defendant which every good woman should entertain towards the man she expects to marry," and that "she had prepared herself to become for defendant a loving and dutiful wife."

Draper, a witness for appellee, was permitted to testify to a conversation that occurred between him and appellant, and appellant ob-

jected, because the conversation occurred after the suit was instituted and while the witness was endeavoring to affect a compromise; because the evidence of appellant's declaration that he had intended to marry appellee would induce the jury to believe that a contract of marriage had been made by appellant. The objections were properly overruled. There was no evidence of any effort on the part of the witness to effect a compromise, and the admissions of appellant were properly admitted, and the jury could draw what conclusions they deemed reasonable and just from the admissions.

Proof of the lameness of appellant would have been no answer to his breach of his promise to marry appellee, and would have had no tendency to show that he would not have made the promise, and was properly rejected. We do not consider that the remarks of the judge in excluding the testimony worked any injury to appellant.

There is no merit in the fifth and thirteenth assignments of error which are presented together in the brief of appellant. The fifth assignment complains of evidence of breaches of promise made by appellant prior to November 2, 1894, and no such evidence having been introduced, the assignment is without foundation. The charge, the refusal of which is complained of in the thirteenth assignment of error, would have presented an issue that was not supported by proof. There was no evidence that appellee had discarded and broken off the engagement until appellant, by failing to appear at the time appointed for the nuptials, had caused appellee to reproach him for his conduct and to tell him not to come again to see her. At the time that this was done, he had not called to fulfill his delayed vows, but to give a very unsatisfactory and not very flattering reason for his failure to appear at the appointed time. Womanly delicacy and self-respect demanded that appellee should resent the insult offered her. Appellant had breached his promise before he received his dismissal. Evidence of failures on the part of appellant to meet his engagement to marry in December, 1894, was properly admitted as bearing on the amount of damages that should be allowed by the jury.

There is no force in the seventh assignment of error. There was nothing said or done by the court in connection with the testimony of appellee on the subject of her affection for appellant, that would indicate to the jury the opinion of the court thereon, or that tended to prejudice appellant's case before the jury.

Appellant offered to prove by appellee that there had been insanity in her family, and that she had so sworn on the trial of her brother who had been charged with murder, but the evidence was excluded by the court. The evidence was properly excluded. Had it been alleged and proven by appellant that the engagement had been entered into by him in ignorance of the fact that insanity had existed in the family of appellee, and that he had broken off the engagement and refused to consummate the marriage because of such insanity, the evidence might have been admissible in mitigation of damages, but there was no allegation to that

effect, and there was no offer, in connection with the proof desired, to show that appellant had, in ignorance of the taint of insanity in the family of appellee, entered into the marriage contract and broken it off when he ascertained the facts. If appellant knew of the family infirmity at the time he entered into the contract (and, if it was true, the circumstances indicate that he knew it) he cannot mitigate the damages for his breach of promise on that ground.

The tenth assignment of error is untenable. It was proper to prove the admissions of appellant, made at any time, as to his intentions in connection with the matter of marriage with appellee. Evidence of his expressed intention was proper as tending to corroborate testimony that he actually proceeded to carry his intentions into effect by making the marriage contract. The court instructed the jury that, "A mere intention to marry, without a positive agreement to marry, would not be sufficient to sustain an action." The court properly refused to permit appellant to enter into an investigation of the age of appellee's young brother. There was no relevancy or materiality in the testimony. If the object was to fix the age of appellee, we are of the opinion that her age was not material to the issue. There was fully as much culpability in breaking a promise made to an elderly woman as to a young one, but if testimony as to appellee's age was important, both appellee and her mother had testified fully in regard to it.

The special charges asked by appellant were rightly refused. The law of the case was fully and fairly submitted in the charge given by the court. The proper measure of damages was submitted to the jury. Glasscock v. Shell, 57 Texas, 215; Suth., Dam., sec. 988.

The verdict, under the circumstances, was not excessive.

The judgment is affirmed.

*Affirmed.*